## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
| |
VINH THANH HO, : CIVIL ACTION
:
Plaintiff, :
:
v. : No.  13-7534
:
ALLSTATE INDEMNITY CO., :
:
Defendant. :
_____:

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                     **July 7, 2014**

Presently before this Court are Cross Motions for Partial Summary Judgment filed by

Plaintiff, Vinh Thanh Ho, and, Defendant, Allstate Indemnity Company, the Response in

Opposition filed by Plaintiff, and Defendant's Memorandum in Support of Summary Judgment.

For the following reasons, Plaintiff's Motion is denied, and Defendant's Motion is granted.

### I.      BACKGROUND

The following facts are as stipulated to by the parties.  Plaintiff, Vinh Thanh Ho

("Plaintiff"), is a citizen of the Commonwealth of Pennsylvania, who resides at 2242 South

Shield Street in Philadelphia, Pennsylvania.[1]  Compl. ¶ 1.  Defendant, Allstate Indemnity

Company ("Defendant"), is a corporation organized and existing under the laws of the state of

Illinois, with its principal place of business located in Northbrook, Illinois.  Id. ¶ 2.  At all times

relevant to this litigation, there existed, in full force and effect, a Business Auto Policy (the

"Policy") issued by Defendant to Plaintiff, which provided coverage in accordance with the

_____

[1]This litigation was removed from state court, therefore, we rely on the Complaint filed in Court of Common Pleas for Philadelphia County.  (See Doc. 1.)

requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.* ("PMVFRL").  (Stip. of Facts ¶ 5.)  This Policy provided $100,000 in liability coverage for two motor vehicles.  (Id. ¶ 6.)  Plaintiff signed forms regarding the election or waiver of uninsured motorist coverage, underinsured motorist ("UIM") coverage and first party benefits in connection with the Policy.  (Id. ¶ 7.)  Plaintiff did not sign any Rejection of Stacked Underinsured Motorist Coverage in connection with the Policy issued by Defendant.  (Id. ¶ 8.)

On October 6, 2011, Plaintiff, while operating his motor vehicle, was involved in an automobile accident with Maria Lucero ("Lucero").  Compl. ¶ 5.  The accident was caused by the negligence, carelessness and recklessness of Lucero in operating her motor vehicle.  Id. ¶ 7.  Plaintiff suffered serious and permanent injuries as a result of the accident.  Id. ¶ 6.  After making claims upon Lucero and her insurer, Plaintiff received $15,000 from the insurer for the damages that he suffered.  Id. ¶¶ 14-15.  The sum received, which was the maximum liability limit for Lucero's policy, was not enough to cover Plaintiff's injuries.  Id. ¶ 17.

Sometime in December 2013, Plaintiff filed suit against Defendant in the Philadelphia County Court of Common Pleas.  On December 23, 2014, Defendant removed the suit to this Court based upon the diversity of the parties.  In the Complaint, Plaintiff seeks a declaration by the Court that he is entitled to recover up to $200,000 in UIM benefits pursuant to the Policy. (Stip. of Facts ¶ 2.)  On March 5, 2014, we effectuated the parties preference to resolve the legal issues through Cross Motions for Summary Judgment.  (See Scheduling Order, Mar. 5, 2014.) Plaintiff and Defendant filed their Cross Motions on April 16th and 17th, respectively.  (See Doc. Nos. 11, 12.)  On April 22, 2014, Plaintiff filed a Response in Opposition, and Defendant filed a Memorandum in Support of its Motion on May 9, 2014.  (See Doc. Nos. 13, 14.)

## II.     STANDARD OF LAW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991).  The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "A fact is material if it could affect the outcome of the suit after applying the substantive law.  Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992).  "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion.  Tziatzios v. United States, 164 F.R.D. 410, 411-12

3

(E.D. Pa. 1996).  If the court determines that there are no genuine issues of material fact, then summary judgment will be granted.  Celotex, 477 U.S. at 322.

## III.   DISCUSSION

This case requires the Court to decide whether the Policy issued by Defendant to Plaintiff provides legal coverage for an auto accident involving Plaintiff and an underinsured motorist.  In Pennsylvania, underinsured motorist coverage provides protection for injuries arising out of the maintenance or use of a motor vehicle from injuries caused by the owners or operators of underinsured motor vehicles.  See 75 Pa.C.S.A. § 1731(c); see also Wolgemuth v. Harleysville Mut. Ins. Co., 535 A.2d 1145 (Pa. Super. Ct. 1988), *appeal denied* 551 A.2d 216.  However, the purchase of such coverage by the insured is optional.  Id.  In order to enable an informed decision by the insured, Pennsylvania law imposes several requirements on the insurer in attaining a waiver of underinsured motorist coverage by the insured.  Id.  First and foremost, the insurer must provide the following written rejection form for the insured to sign:

REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

_____
Signature of First Named Insured

_____
Date

75 Pa.C.S.A. § 1731(c).  Furthermore, the law requires that the rejection form be printed on

separate sheets in prominent type and location.  <u>See</u> 75 Pa.C.S.A. § 1731(c.1).  The effectuation

and enforcement of the waiver requires the form to be signed and dated by the insured.  <u>Id.</u>

Finally, any rejection form that does not ***specifically comply*** with this section is void.  <u>Id.</u>

      The waiver form at issue in this case reads as follows:[2]

      REJECTION OF UNDERINSURED MOTORIST PROTECTION

**If you desire to reject this coverage entirely, you must sign the waiver below:**
By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

_____
Signature of First Named Insured

_____
Date

(<u>See</u> Pl.'s Mot. for Summ. J., Ex. C2.)

      In this case, the Rejection of Underinsured Motorist Coverage form was signed by

Plaintiff, contains the entirety of the mandatory language and complies with all of the format

requirements of § 1731.  However, in addition to the statutorily mandated text is the following

sentence, which is located below the heading, "If you desire to reject this coverage entirely, you

must sign the waiver below."  The placement of this sentence is not an issue in this case.  <u>See</u>

<u>Robinson v. Travelers Indem. Co.</u>, 520 F. App'x 85, 89  (3d Cir. 2013)(finding language allowed

where it does not come between the language specified in § 1731(c) and the signature and date

[2]The additional language is highlighted in bold.

line); see also Jones v. Unitrin Auto and Home Ins. Co., 40 A.3d 125, 131 (Pa. Super. 2012) (holding waiver void where the additional language is placed after the mandatory language, but before the signature and date line).  The sole issue before this Court is whether the addition of the sentence violates the requirement that the rejection form specifically comply with § 1731.  See 75 Pa.C.S.A. § 1731(c.1).  If so, Plaintiff's rejection is void.  Id.

Plaintiff's position is that the addition of superfluous language past that mandated in the PMVFRL renders his rejection of UIM coverage unenforceable.  (Pl.'s Mot. for Summ. J. ¶ 13.) For this reason, Plaintiff argues that Defendant is required to provide UIM coverage under the Policy.  (Id.)  Furthermore, Plaintiff believes that he is entitled to stack the coverages[3] because he did not sign any rejection of stacked UIM coverage form pursuant to § 1738 of the PMVFRL.[4] (Id. ¶ 14.)  Overall, Plaintiff seeks $200,000 from Defendant for the injuries suffered in the auto accident.[5]  (Id. ¶ 16.)

Contrary to Plaintiff's position, Defendant argues that since Plaintiff signed a valid rejection form, he is not entitled to any UIM benefits.  (Def.'s Mot. for Summ. J. ¶ 15.) Defendant's position is based on its belief that the rejection form was specifically compliant with the PMVFRL because  it contained every word required by § 1731, and the additional language did not make the form ambiguous, alter the nature of Plaintiff's rejection or change the scope of

---

[3]Pennsylvania law defines stacking as the ability to add, or "stack," UIM coverages from multiple vehicles under an insurance policy, thus increasing the amount of coverage available under any such policy.  Pegg v. United Services Auto. Ass'n, No. 09-2108, 2010 WL 5317371, at *3 (D.N.J. Dec. 17, 2010) (citing Everhart v. PMA Ins. Group, 595 Pa. 172, 175, 938 A.2d 301 (2007)).

[4]The parties have stipulated to the fact that Plaintiff did not sign any Rejection of Stacked UIM Coverage form in connection with the Policy issued by Defendant.  (See Stip. of Facts ¶ 8.)

[5]The $200,000 sought by Plaintiff is based upon the stacking of the two motor vehicles under the Policy and each motor vehicles $100,000 liability coverage limit.  (See Stip. of Facts ¶ 6.)

coverage offered under the Policy.  (Id. ¶¶ 11-13.)  Thus, due to Plaintiff's valid rejection, the Policy does not provide any UIM coverage to Plaintiff, and there are no UIM benefits to be stacked.  (Id. ¶¶ 15.)

      The arguments raised by Plaintiff and Defendant evince contrasting viewpoints on how the phrase "specifically comply" should be interpreted.  On one hand, Plaintiff argues for a strict interpretation whereby the addition of language outside that mandated by § 1731(c) renders the rejection form void.  (See Pl.'s Motion for Summ. J., 2, 4.)  On the other hand, Defendant advocates a broad reading, which requires only that the form include all of the language mandated by the PMVFRL, and that any supplemental wording specifically complies so long as it does not alter the nature of the waiver.  (See Def.'s Motion for Summ. J., 9.)

      The logical starting point for resolving this issue is to ascertain the meaning of "specifically comply" as used in the context of § 1731(c.1).  Referring to the PMVFRL is fruitless as it does not explicitly define the phrase.  See 75 Pa. C.S.A. § 1701 et seq.  Moreover, courts have reached differing conclusions on whether the addition of language contravenes the "specific compliance" requirement, thus, rendering a UIM waiver unenforceable.  See Robinson v. Travelers Indem. Co., 520 F. App'x 85 (3d Cir. 2013) (allowing additional language); Unitrin Auto & Home Ins. Co. v. Heister, No. 04-2100, 2005 WL 2314372 (M.D. Pa. Sept. 22, 2005) (same) but see Douglas v. Discover Property & Cas. Ins. Co., 810 F. Supp. 2d 724 (M.D. Pa. 2011), appeal denied, 2013 WL 5595957 (M.D. Pa. Oct. 10, 2013) (additional language violates § 1731); Jones, 40 A.3d at 125 (same) .  Facially the decisions in Robinson and Heister support Defendant's contention while Douglas and Jones endorse Plaintiff's approach.  See Robinson, 520 F. App'x at 85; Heister, 2005 WL 2314372; Douglas, 810 F. Supp. at 724; Jones, 40 A.3d at

125.  However, careful review of these decisions has enabled the Court to harmonize these seemingly disparate holdings.  Before extrapolating these common threads, we examine each of the four cases.

In <u>Robinson</u>[6], the United States Court of Appeals for the Third Circuit ("Third Circuit") grappled with the issue of whether the insertion of the word "Motorists" into "Underinsured Coverage" violated the PMVFRL and voided the waiver.[7]  <u>Robinson</u>, 520 F. App'x at 85. Finding that the addition did not offend the PMVFRL, the Court overturned the ruling of the District Court, and held that the addition of "Motorists" was acceptable as it "did not introduce ambiguity into the form, did not change the meaning or scope of the coverage, and - indisputably - did not contravene any party's understanding of the intended coverage."  <u>Id.</u>, 520 F. App'x at 89.  Rather, inserting "Motorists" directly related to the rejection of UIM coverage, and acted to clarify, "as it makes the phrase consistent throughout the section."  <u>Id.</u>

In <u>Heister</u> the District Court determined that the addition of the following sentence, "By rejecting this coverage, I am also signing the waiver on pg. 10 rejecting stacked limits of underinsured motorist coverage," did specifically comply with § 1731.  <u>Heister</u>, 2005 WL 2314372, at *4.  In reaching this conclusion, the Court advocated a "common-sense approach," which elevates substance over form. <u>Id.</u>  Thus, the language specifically complied because "the additional sentence was surely designed to aid the insured in understanding his policy, an

---

[6]While Plaintiff correctly asserts that this case is non-precedential, we do find it to be instructive in this case.

[7]Though the heading of the language mandated by § 1731 reads "Rejection of Underinsured Motorist Protection," in the ensuing paragraph it refers only to "underinsured coverage."  <u>See</u> 75 Pa.C.S.A. § 1731(c).  Defendant in <u>Robinson</u> injected "motorists" between "underinsured" and "coverage" in the paragraph.  520 F. App'x at 87.

otherwise esoteric and complicated document for the lay reader to comprehend." Id.  In addition, the Court advanced a broad definition of "specifically" finding that specific compliance requires the inclusion of the exact language mandated in § 1731, but does not explicitly preclude the addition of clarifying language.  Id. at 5 (stating that nowhere in § 1731(c.1) is any indication that the addition of clarifying language vitiates an otherwise valid UIM rejection waiver form).

Contrarily, Plaintiff cites to Douglas and Jones for the proposition that a rejection form that contains additional language does not specifically comply with the requirements of the PMVFRL.  In Douglas, the Court held that the use of "Underinsured Motorists" instead of "Underinsured Coverage" rendered the waiver null and void for failure to comply with § 1731(c).  Douglas, 810 F. Supp. 2d at 732.  In Jones, the rejection form contained the following language, positioned at the end of the paragraph, but before the signature and date line, "By rejecting this coverage, I am also signing the waiver on P. 13 rejecting stacked limits of underinsured motorist coverage."  Jones, 40 A.3d at 128.  This sentence mirrored the verbiage in Heister.  However, unlike Heister, the Pennsylvania Superior Court in Jones invalidated the waiver finding that "the additions to the prescribed language, and deviation from the proximal relationship of the components . . . fail to comply with the statute (§1731(c))."  Id. at 131.

We believe Plaintiff's reliance on Douglas and Jones to be misplaced.  On their face, the results of these cases favor Plaintiff's position.  However, under closer inspection, the analysis undertaken by the Courts does not.  For instance, the Douglas Court, in a later motion, expounded upon its holding, which voided the waiver, by asserting that the form did not "specifically comply" with the statute as it created ambiguity making the waiver "unintelligible." Douglas v. Discover Property and Casualty Insur. Co., No. 08-1607, 2013 WL 5595957, at *3

(M.D. Pa. Oct. 10, 2013). Inherently in reaching this conclusion, the Court eschewed a restrictive view of § 1731(c.1) that would automatically invalidate any waiver that contains additional language. Id. Rather, the Court proceeded to interpret the effect of the additional language on the clarity of the document. Id. Thus, in effect the Douglas Court's decision is in line with the approaches taken in Robinson and Heister. Accordingly, we find that Douglas supports Defendant's position.

Likewise, the Superior Court's holding in Jones is not beneficial to Plaintiff's claim. See Jones, 40 A.3d at 125. The Third Circuit found the Superior Court's holding in Jones voiding the waiver as consistent with its decision to take the opposite action in Robinson. See Robinson, 420 F. App'x at 89. Specifically, the Robinson Court emphasized the pivotal importance of pertinence and placement of the additional language. 420 F. App'x at 89 (agreeing that waiver was void in Jones because "the UIM rejection form did not specifically comply with § 1731 because the additional text did not pertain to the rejection of UIM coverage, and appeared between the text and signature line prescribed in § 1731(c).").

Applying this rationale to the facts of this case, it is evident that the holdings in Robinson and Jones support our finding that the additional language does not offend the requirements of § 1731. Id. Here, the additional sentence pertained to the rejection of UIM coverage and was not improperly located in the waiver form. Furthermore, we find this approach to be accordant with previous Pennsylvania Superior Court decisions upholding the addition of clarifying language under the PMVFRL in a slightly different context. See Allstate Insur. Co. v. Seeyle, 846 A.2d 1286, 1288 (Pa. Super. Ct. 2004) (finding waiver valid under § 1738 where additional language was clarifying); Vosk v. Encompass Insur. Co., 851 A.2d 162, 167 (Pa. Super. Ct. 2004) (same).

In an effort to synthesize the caselaw and clarify the interplay between § 1731 and the inclusion of additional language, we draw several conclusions from the holdings of <u>Robinson</u>, <u>Heister</u>, <u>Douglas</u> and <u>Jones</u>.  First, the placement of the language is vitally important.  In this case, placement is not an issue as the additional sentence is located under the heading, and before the main paragraph.  <u>See</u> <u>Robinson</u>, 520 F. App'x at 89 (stating additional language cannot be placed between the mandatory language and the signature and date line); <u>see also</u> <u>Jones</u>, 40 A.3d at 131 (same).  Second, the additional language must at the very least "pertain" to the rejection of UIM coverage, and cannot "introduce ambiguity, . . . change the meaning or scope of the coverage (or) . . . contravene any party's understanding of the intended coverage."  <u>Robinson</u>, 520 F. App'x at 89; <u>see also</u> <u>Heister</u>, 2005 WL 2314372, at *4 (finding clarifying language specifically complies); <u>Douglas</u>, 2013 WL 5595957, at *3 (holding that form with surplus language did not "specifically comply" with the statute as it rendered the waiver "unintelligible").  Here, we find that the addition of the sentence, "If you desire to reject this coverage entirely, you must sign the waiver below," to be in specific compliance with § 1731 because it serves to clarify and emphasize the gravity of the decision to reject UIM coverage.

Finally, practical considerations underlie our decision.  Plaintiff cannot escape the fact that he elected to forego UIM coverage in exchange for lower premiums.  Our holding reflects this Court's belief that Plaintiff made the decision to waive UIM coverage with a clear understanding of the gravity of this action as is intended by the protections of § 1731.  Although, "it is undoubtedly a 'better practice . . . for insurance companies . . . not to supplement the required language of § 1731,'" we reject the contention that the addition of any language automatically voids the waiver.  <u>Robinson</u>, 520 F. App'x at 88 (quoting <u>Heister</u>, 2005 WL

2314372 at *4).  Finding otherwise "would be to elevate form over substance in a hyperliteral interpretation of the PMVFRL that defies common sense."  Id. at 89.

IV.     **CONCLUSION**

For the aforementioned reasons, we find in this case that the addition of the sentence "If you desire to reject this coverage entirely, you must sign the waiver below," does not offend the requirement that the rejection form specifically comply with § 1731(c).  Consequently, we hold that Plaintiff's rejection of UIM coverage was valid, and that Plaintiff is not entitled to any UIM benefits under the Policy.  Accordingly, Plaintiff's Motion is denied and Defendant's Motion is granted.

An appropriate Order follows.